### JUNIATA VALLEY SCHOOL DISTRICT,

v.

**Robert K. WARGO, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 8, 2002.

Decided May 3, 2002.

David A. Ody, Huntingdon, for appellant.

Thomas E. McDowell, Huntingdon, for appellee.

Before COLINS, President Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge COLINS.

Robert Wargo appeals the declaratory judgment order of the Court of Common Pleas of Huntingdon County decreeing that he is not entitled to a list of the names and addresses of persons who pay earned income tax to the Juniata Valley School District.

In January 2001, pursuant to the law popularly known as the Right–to–Know Act,[1] Mr. Wargo, a taxpayer in the School District, made a formal written request for a list of the names and addresses of persons who pay earned income tax to the School District. (Hearing Transcript, p. 2.) In response to Mr. Wargo's request, the School District filed a declaratory judgment action in the court of common pleas asserting its position that disclosure of the requested information is statutorily precluded under Section 13 of The Local Tax Enabling Act[2] and the Local Taxpayers Bill of Rights Act, 53 Pa.C.S. § 8437. The School District asked the court to determine whether the requested information is a public record under the terms of the Right–to–Know Act or whether access to the information is forbidden by statute.

At a hearing before the trial court, counsel for Mr. Wargo stated that his client advocates the exploration of an alternative tax scheme that would replace the real property tax with an earned income tax. He explained that Mr. Wargo requested the information in order to compare the names and addresses of those who pay earned income tax with the names and addresses of those who pay real property tax and in order to challenge the accuracy of data used in tax studies commissioned by the School District. (Hearing Transcript, pp. 5–6.) Counsel for the School District stipulated that the School District does in fact maintain a list of the names and addresses of those who will receive earned income tax returns. The list consists of those persons who have paid the tax previously, and the School District adds names and addresses from census data, from employer tax returns, and from wage tax returns.

Citing our decision in *Scranton Times v. Scranton Single Tax Office*, 736 A.2d 711 (Pa.Cmwlth.1999), *affirmed*, 564 Pa. 30, 764 A.2d 17 (2000), the trial court held that Mr. Wargo is not entitled to the requested list of names and addresses because release of the information is forbidden by the Local Tax Enabling Act. Rejecting Mr. Wargo's argument that he seeks only the identity of the taxpayers and not tax information, the trial court cited *Foster v. United States Department of Justice*, 933 F.Supp. 687 (E.D.Mich.1996), for the proposition that a taxpayer's identity is protected information.

■ On appeal to Commonwealth Court,[3] Mr. Wargo raises a single issue for our review: whether a taxpayer is entitled to a list of the names and addresses of persons who pay earned income tax to the school district in which the taxpayer resides. Wargo argues that the information he seeks is not protected by law, and he distinguishes *Scranton Times* from the present matter in which the School Dis-

1. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4.

2. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6913.

3. Commonwealth Court's scope of review in a declaratory judgment action is limited to de-
termining whether the trial court's findings are supported by substantial evidence, and whether the trial court committed an error of law or abuse of discretion. *Conley Motor Inns, Inc. v. Township of Penn*, 728 A.2d 1012 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 560 Pa. 731, 745 A.2d 1225 (1999).

trict maintains the requested list, obviating the necessity that the School District provide access to tax records in order to cull the requested information.

The Right–to–Know Act provides that public records shall be open for public inspection and examination, and it gives citizens of the Commonwealth the right to take extracts and/or make copies, photographs, and/or photostats of public records. 65 P.S. §§ 66.2 and 66.3. Section 1(2) of the Right–to–Know Act, which defines "public record," also sets forth exceptions to general rule requiring public disclosure. This definition essentially results in three classifications of records kept by government agencies:

> 1) records that *must* be made public because they are subject to the Act; 2) records that *may* be made public because they fall within the discretion of the public official to make them public because they either fall within an exception under the Act or are otherwise not prohibited from being released; and 3) those records that *cannot* be released because there is an express statutory prohibition against their release, i.e., social security numbers, criminal records and tax records.

*Scranton Times*, 736 A.2d at 713 (footnotes omitted).

In this case, as in the *Scranton Times* case, the information sought is information from tax records and the government agency asserts a statutory prohibition against release of the information. Both the Local Tax Enabling Act and the Local Taxpayers Bill of Rights Act prohibit the disclosure of information gained by the taxing authority as a result of any required return. Section 13(V)(f) of the Local Tax Enabling Act states,

> Any information gained by the officer, his agents, or by any other official or agent of the taxing district, as a result of any declarations, returns, investigations, hearings or verifications required or authorized by the ordinance or resolution, shall be confidential, except for official purposes and except in accordance with a proper judicial order, or as otherwise provided by law.

53 P.S. § 6913(V)(f). The Local Taxpayers Bill of Rights Act states, in pertinent part,

> Any information gained by a local taxing authority as a result of any audit, return, report, investigation, hearing or verification shall be confidential tax information. It shall be unlawful, except for official purposes or as provided by law, for any local taxing authority to:
>
> (1) Divulge or make known in any manner any confidential information gained in any return, investigation, hearing or verification to any person.
>
> (2) Permit confidential tax information or any book containing any abstract or particulars thereof to be seen or examined by any person.
>
> (3) Print, publish or make known in any manner any confidential tax information.

53 Pa.C.S. § 8437. Both statutes make it a crime to release tax information.[4]

■ Although in this case, unlike the *Scranton Times* case, the taxing authority does maintain the information requested, such that the information could be obtained without giving access to the tax records, we must agree with the trial court that in this case, the identity of the taxpayer falls within the category of confidential

---

**4.** *See* Section 13(IX)(b), 53 P.S. § 6913(IX)(b) (maximum $500 fine and 30 days imprisonment), and 53 Pa. C.S § 8437 (maximum $2,500 and costs and 1 year imprisonment and dismissal from office).

information obtained from tax declarations and returns. In the *Foster* case cited by the trial court, the district court upheld the Internal Revenue Service's decision to deny a Freedom of Information Act[5] request for documents containing taxpayer identification information. The denial was premised on an Internal Revenue Code provision prohibiting disclosure of returns and return information, and broadly defining return information to include the taxpayer's identity. 933 F.Supp. at 691. Although neither the Local Tax Enabling Act nor the Local Taxpayers Bill of Rights Act expressly defines return information, "information gained from the earned income tax return" includes the taxpayer's identity, and as such it is confidential by means of an express statutory prohibition against its release.

We decline Mr. Wargo's invitation to treat his request as we have a request for the names and addresses of registered electors in *Hessley v. Campbell*, 751 A.2d 1211 (Pa.Cmwlth.2000), and a request for the names and addresses of delinquent real estate taxpayers in *City of Philadelphia v. Doe*, 45 Pa.Cmwlth. 225, 405 A.2d 1317 (1979). *Hessley* did not involve a statutory prohibition against release of the requested information; the issue in *Hessley* was whether the $300 charge for providing the information on diskette constituted a reasonable rule governing the making of copies of public records.

In *Doe*, a group of individuals sought access to delinquent real estate tax records. The City premised its denial of access to the requested documents on a home rule charter provision prohibiting disclosure of city records that would invade a person's right to privacy. We upheld the trial court's determination that neither a Pa.Code section providing for confidentiality of information obtained by the City in the conduct of an examination or investigation nor a tax regulation maintaining the confidentiality of information gained as the result of any return could limit the access provided for in the charter. 405 A.2d at 1320.

The present case is distinguishable from *Doe* in several respects.[6] First, the City's basis for denying access to the delinquent tax information was not an express statutory prohibition against the release of the information. Second, the information sought related to real estate taxes. The confidentiality of the information sought in the present case is premised on express statutory prohibitions, and the Local Tax Enabling Act specifically protects the confidentiality of information on earned income tax returns. Furthermore, the Local Taxpayers Bill of Rights Act expressly excepts real property taxes from its application. 53 Pa.C.S. § 8438.

Accordingly, we affirm the trial court's order.

### *ORDER*

AND NOW, this 3rd day of May 2002, the order of the Court of Common Pleas of Huntingdon County in the above-captioned matter is affirmed.

---

5.  5 U.S.C. § 522 *et seq.*

6.  One respect in which they do not differ is that they share the "procedural aberration" that the keeper of the records initiated a declaratory judgment action rather than the party seeking access appealing the denial of access under the Right–to–Know Act. 405 A.2d at 1319, and n. 2.