IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Michalski,                       :
                Petitioner     :
                                   :
       v.                             :
                                   :
Department of Corrections                   :
(Office of Open Records),                   :   No. 392 C.D. 2023
                Respondent   :   Submitted: March 8, 2024


BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                        FILED:  May 7, 2024

Michael A. Michalski (Michalski), pro se, petitions this Court for review of the Office of Open Records' (OOR) March 28, 2023 Final Determination (Final Determination) denying his appeal from the Department of Corrections' (DOC) denial of his Right-to-Know Law (RTKL)[1] request (Request) seeking the list of movies DOC ordered from Netflix, which were shipped to eight specified correctional institutions. Essentially, the issue before this Court is whether the OOR properly determined that DOC met its burden of proving that Netflix histories are not DOC records.[2] After review, this Court reverses.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] In his Statement of Questions Involved, Michalski provides eight issues:

> 1. Are the Netflix histories a record? **YES**
>
> 2. Do the Netflix histories document a transaction of a government agency? **YES**
>
> 3. Are the Netflix histories a record held by a third party in relation to the performance of a government function? **YES**

Michalski is incarcerated at the State Correctional Institution (SCI) at Albion. On January 31, 2023, Michalski filed the Request with DOC seeking the list of movies DOC ordered from Netflix, which were shipped to eight SCIs between June 2019 and October 31, 2021. Michalski specified that he sought "these records [to] be printed directly from the Netflix history tab and [to] include the page range in the print dialog[ue] box for the ranges associated with [those] dates." Certified Record (C.R.), OOR Ex. 1 (Michalski Appeal) at 8. On February 14, 2023, after invoking an extension to respond, *see* Section 902(b) of the RTKL, 65 P.S. § 67.902(b), DOC denied the Request, reasoning that because the Netflix histories are not DOC records, they do not exist in DOC's possession, custody, or control.

On February 28, 2023, Michalski appealed to the OOR challenging DOC's denial and arguing that DOC should provide the requested information because each identified SCI paid for a Netflix subscription from its Inmate General Welfare Fund, and the SCIs access Netflix on DOC computers. Further, Michalski claimed that DOC previously provided Netflix histories to him. The OOR invited both parties to supplement the record and directed DOC to notify any affected third parties of their ability to participate in this appeal. *See* Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c).

---

4. Are the records a database? **YES**

5. Are the Netflix histories able to be downloaded or printed from the [web]site? **YES**

6. Does the agency have access and/or control of the Netflix histories? **YES**

7. Did the Deputy Agency Open Records Officer (Kimberly Grant) err in stopping/preventing facility personnel from accessing and printing the records requested? **YES**

8. On appeal, did the Appeal Officer answer each claim made by [Michalski]? **NO**

Michalski Br. at 4. Because these issues are encompassed in the Court's stated issue, they will be addressed in the analysis thereof.

On March 7, 2023, DOC submitted a position statement, reiterating its arguments. In support thereof, DOC provided Deputy Open Records Officer Kimberly Grant's (Grant) Declaration (Grant Declaration), which she made under penalty of unsworn falsification to authorities. Grant stated therein, in pertinent part:

3. On January 31, 2023, [DOC] received [the R]equest from . . . Michalski[] seeking, *inter alia*, the Netflix history for movies ordered/shipped, from June 2019 through October 31, 2021, for [eight SCIs].

4. In response to [] Michalski's [R]equest, a good faith effort was made to ascertain the existence of documents responsive to the [R]equest. I contacted each of the [eight] listed [SCIs] regarding this [R]equest. If the requested information exists, it would be maintained by each individual [SCI].

5. Jeffrey Bigam [(Bigam)], SCI-Fayette's Corrections Activities [sic], indicated that the information requested would have to come directly from Netflix's [web]site, and is not a record the [SCIs] maintain[].

6. Specifically, [] Bigam indicated that the information requested from the Netflix history was difficult to print off directly from the Netflix [web]site and would require additional work on [DOC's] end to convert the information into a new document.

7. Based on [] Bigam's response, I sent a follow-up email to the other [seven] [SCIs] informing them they did not need to create a document such as the one described by [] Bigam in response to the RTKL [R]equest.

8. Thus, I can state that after conducting a good faith search of [DOC's] records no responsive records currently exist within [DOC's] possession.

C.R., OOR Ex. 4 (Grant Declaration) at 5-6 (citation omitted).

On March 17, 2023, Michalski mailed a response to the Department's position statement. On March 28, 2023, the OOR denied Michalski's appeal, reasoning:

3

Here, the Request facially seeks documents from Netflix's website. [Michalski] argues that [DOC] can download the histories as .csv files. However, agencies are not required to create records, and the fact that some [SCIs] may have provided this information to [Michalski] in the past is inconsequential to this analysis. Nevertheless, as [Michalski] points out, the histories document [DOC's] activity of ordering movies for inmates to watch. The question then become [sic] whether they are maintained in connection with this activity. As the Grant [Declaration] establishes, they are not. Accordingly, [DOC] has met its burden of proving that the Netflix histories are not records of [DOC].

[Michalski] argues that the records are accessible under Section 506(d) of the RTKL[, 65 P.S. § 67.506(d)], which[] provides that *public records* that are not in the possession of the agency but are in the possession of a third party are accessible if certain conditions are satisfied. The RTKL defines "public record" as a record of a Commonwealth or local agency. However, as established above, the Netflix histories are not records of [DOC], nor is there any evidence that they are records of any other local or Commonwealth agency. Rather, the Request seeks records from [] Netflix's website; while Netflix is a publicly traded corporation, it is plainly not a local or a Commonwealth agency. As such, Section 506(d) [of the RTKL] does not apply to the Netflix histories, and the OOR need not assess whether the conditions required to access records under Section 506(d) are satisfied in this instance.

C.R., OOR Ex. 6, Final Determination at 4-5 (citations omitted). Michalski appealed to this Court.[3]

The issue before this Court is whether the requested Netflix histories are public records that DOC must disclose. The RTKL requires Commonwealth

---

[3] "[This Court's] standard of review of a final determination issued by the OOR is *de novo* and our scope of review is plenary." *Pa. Tpk. Comm'n v. Elec. Transaction Consultants Corp.*, 230 A.3d 548, 556 n.3 (Pa. Cmwlth. 2020).

agencies to provide access to public records upon request. *See* Section 301 of the

RTKL, 65 P.S. § 67.301. Section 102 of the RTKL defines "[p]ublic record" as:

> A record, including a financial record, of a Commonwealth or local agency that:
>
> (1) is not exempt under [S]ection 708 [of the RTKL, 65 P.S. § 67.708 (establishing enumerated exceptions for certain specified information)];
>
> (2) is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree; or
>
> (3) is not protected by a privilege.

65 P.S. § 67.102.

> This Court has explained:
>
> As a first step in evaluating a request, an agency must discern whether [the] requested records are within its possession, custody[,] or control, such that it may be obligated to disclose them. The RTKL defines "records" in pertinent part as follows:
>
> > Information, regardless of physical form or characteristics, that <u>documents a transaction or activity of an agency</u> **and** that is created, <u>received</u> or retained pursuant to law or <u>in connection with</u> a transaction, business or <u>activity of the agency</u>.
>
> . . . 65 P.S. § 67.102 (emphasis added by underlining and bolding).
>
> This Court consistently construes "documents" when used as a verb in the definition of record to mean "proves, supports, [or] evidences." *See Off*[.] *of the Governor v. Bari*, 20 A.3d 634, 641 (Pa. Cmwlth. 2011); *Dep't of Admin. Servs./ASCI v. Parsons*, 13 A.3d 1025, 1034-35 (Pa. Cmwlth. 2011) (*en banc*) (*ASCI I*). The preposition "of," as in records "of" an agency, indicates the record's "origin, its owner or possessor, or its creator." *Bari*, 20 A.3d at 643. However, ***for records to be "of" an agency***,

> ***they do not need to originate with or be created by the
> agency***. *ASCI I.*

*Dental Benefit Providers, Inc. v. Eiseman*, 86 A.3d 932, 936-37 (Pa. Cmwlth. 2014) (bold and italic emphasis added), *aff'd on narrower grounds*, 124 A.3d 1214 (Pa. 2015).

> Importantly,

> [t]he location of a "public record" is not at all a relevant consideration in terms of **the public's right to *access***. Section 701(a) of the RTKL[, 65 P.S. § 67.701(a),] provides that *all* "public records" shall be accessible. It **is not limited to** "**public records**" **in the possession of the agency**. Similarly, Section 302(a) [of the RTKL, 65 P.S. § 67.302(a),] requires local agencies to provide "public records" in accordance with the provisions of the RTKL, not just those "public records" in the possession of the local agency. Indeed, Section 506(d)(3) provides that "[a] request for a *public record in the possession of a party other than the agency* shall be submitted to the open records officer of the agency." Section 506(d)(3) of the RTKL[, 65 P.S. § 67.506(d)] (emphasis added). **Thus, under these provisions, the General Assembly clearly and unambiguously contemplated that all** "**public records**," **regardless of where they are located, should be accessible to the public**. Section 506(d)(1) [of the RTKL, 65 P.S. § 67.506(d)(1)], then, must address something other than the public's right to access "public records"; otherwise, it is redundant of other provisions of the RTKL and would amount to mere surplusage. *See* Section 1921(a) of the Statutory Construction Act of 1972,] 1 Pa.C.S. § 1921(a); *Commonwealth v. Ostrosky*, . . . 909 A.2d 1224, 1232 ([Pa.] 2006) ("The legislature . . . is presumed not to intend any statutory language to exist as mere surplusage and, accordingly, courts must construe a statute so as to give effect to every word.").

*ASCI I*, 13 A.3d at 1037 (bold emphasis added).

> Moreover,

although [S]ection 705 of the RTKL[, 65 P.S. §67.705,] "excuses an agency from creating a new record or reorganizing existing records" and . . . "[a]n agency need only provide the information in the manner in which it currently exists . . . , **drawing information from a database does not constitute creating a record**" under the RTKL.

*Feldman v. Pa. Comm'n on Crime & Delinq.*, 208 A.3d 167, 173 (Pa. Cmwlth. 2019) (quoting *Dep't of Env't Prot. v. Cole*, 52 A.3d 541, 547 (Pa. Cmwlth. 2012) (emphasis added)).  The *Feldman* Court further noted that, in *Cole*,

> [w]e explained that, "to the extent requested information exists in a database, it must be provided," but that the [agency] was only required to provide information "**in the format in which it [was] available**." *Id.* at 548 (emphasis added).  We further concluded that "pulling information from a database is not the creation of a record," and that while an agency is not required to compile information in a certain way, "**the information contained in databases that is subject to disclosure under the [RTKL] must simply be provided to request[ers] in the same format that it would be available to agency personnel**." *Id.* at 549 & n.12 (emphasis added).

*Feldman*, 208 A.3d at 173.

Here, in refusing to provide the records, DOC does not assert that any exemption applies, but rather that "[DOC] has established that it conducted a good faith search for responsive records and was unable to locate any responsive records in [DOC's] possession as the records sought are not records of [DOC.]"  DOC Br. at 11.  Specifically, DOC claims:

> [T]he responsive records would have to come directly from Netflix's [web]site and are not records the [SCI] maintains. . . .  [T]he information requested from the Netflix histories was difficult to print off directly from the Netflix [web]site and would require additional work on [DOC's] end to convert the information into a new document.

*Id*. at 10 (citation omitted).

It is evident that data available on Netflix's website identifying the movies DOC ordered from Netflix for use in its SCIs "documents a transaction or activity of [DOC]" and "is created, received[,] or retained . . . in connection with a transaction, business[,] or activity of [DOC]." 65 P.S. § 67.102. Absent a valid exemption or privilege claim, such histories are public records. The fact that they are in Netflix's possession or are "difficult to print off directly from the Netflix [web]site[,]" DOC Br. at 10, does not change the conclusion that they are public records that DOC must disclose. *See Feldman*; *Dental Benefit*; *ASCI I*. Accordingly, the OOR erred by determining that DOC met its burden of proving that Netflix histories are not DOC records.

For all of the above reasons, the OOR's Final Determination is reversed.

_____
ANNE E. COVEY, Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Michalski,                          :
                 Petitioner    :
                                   :
          v.                                  :
                                   :
Department of Corrections                :
(Office of Open Records),                 :  No. 392 C.D. 2023
                Respondent   :

## O R D E R

AND NOW, this 7th day of May, 2024, the Office of Open Records' March 28, 2023 Final Determination is reversed.

_____
ANNE E. COVEY, Judge